OPINION *Page 2 
{¶ 1} In this consolidated appeal, appellants, Victor E. and Rhonda E., separately appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("juvenile court"), which granted permanent care and custody of A.E., Victor E.'s daughter, to Franklin County Children Services ("FCCS") and which denied Rhonda E.'s motion for legal custody of A.E.[1] Because the juvenile court's judgment is supported by competent, credible evidence, we affirm the juvenile court's judgment.
 {¶ 2} A.E. was born in December 2004. At the time of A.E.'s birth, evidence of cocaine was found in A.E. and her mother. Two days after her birth, A.E. was removed from her mother's care and placed with FCCS, which placed her in foster care. She has resided with the same foster family on a continuous basis. Following her birth, A.E. sustained, among other things, developmental delays, deficits in motor skills, musculature weakness in her mouth and jaw, and recurring seizures, which apparently are sequelae from her prenatal exposure to drugs.
 {¶ 3} By complaint filed on August 29, 2005, FCCS alleged that A.E. was an abused, neglected, and dependent child. After FCCS filed its complaint, a guardian ad litem was appointed for A.E. FCCS later amended its complaint by dismissing neglect and dependency causes of action. *Page 3 
 {¶ 4} Following an adjudicatory hearing, a magistrate found that A.E. was an abused child pursuant to R.C. 2151.031(C) and (D). Finding no error of law or other defect on the face of the magistrate's decision, on September 26, 2005, the juvenile court approved and adopted the magistrate's decision as its own. After A.E. was adjudged an abused child, she was placed in the temporary custody of FCCS.
 {¶ 5} On July 26, 2006, FCCS moved for permanent care and custody of A.E. Later, in January 2007, Rhonda E., A.E.'s paternal aunt, moved the juvenile court to join her as a party to the proceedings, and in February 2007, Rhonda E. moved for legal custody of A.E. Adopting a magistrate's decision that granted Rhonda E.'s motion to be joined as a party, the juvenile court thereafter joined Rhonda E. as a party to the proceedings in February 2007.
 {¶ 6} After conducting a hearing, the juvenile court granted FCCS's motion for permanent care and custody of A.E. and denied Rhonda E.'s motion for legal custody. In its decision, the juvenile court found, among other things, that: (1) clear and convincing evidence showed that both parents abandoned A.E., see, generally, R.C. 2151.414(B)(1)(b); and (2) clear and convincing evidence showed that "[A.E.] was not in the temporary custody of FCCS for twelve or more months of a consecutive twenty-two month period at the time of the filing of the motion for permanent custody, and [A.E.] cannot be placed with her parents within a reasonable time or should not be placed with her parents." (Aug. 14, 2007 Decision and Entry, at 3.) See, generally, R.C. 2151.414(B)(1)(a). The juvenile court further found that clear and convincing evidence supported a finding that termination of parental rights was in A.E.'s best interests. *Page 4 
 {¶ 7} From the juvenile court's judgment, appellants Victor E. and Rhonda E. separately appeal.[2] Because these separate appeals involve similar parties and issues, this court sua sponte consolidated appellants' appeals for purposes of record filing, briefing, and oral argument.
 {¶ 8} In his appeal, Victor E. advances a single assignment of error for our consideration: "The juvenile court never made the required finding that FCCS made reasonable efforts to reunify the family."
 {¶ 9} In her appeal, Rhonda E. asserts the following assignments of error for our consideration:
 FIRST ASSIGNMENT OF ERROR
 IT WAS AN ABUSE OF DISCRETION AND/OR ERROR FOR THE TRIAL COURT TO NOT AWARD LEGAL CUSTODY TO PATERNAL AUNT, RE., AS A LESS RESTRICTIVE PLACEMENT RATHER THAN TERMINATION OF PARENTAL RIGHTS.
 SECOND ASSIGNMENT OF ERROR
 IT WAS ERROR FOR THE TRIAL COURT TO ADMIT INTO EVIDENCE A CASEWORKER'S STATEMENTS OF WHAT MOTHER'S WISHES WERE FOUR (4) MONTHS PRIOR TO TRIAL PURSUANT TO EVID.R. 801(D)(2).
 {¶ 10} The right to raise a child is a basic and essential civil right. In re J.Z., Franklin App. No. 05AP-8, 2005-Ohio-3285, at ¶ 9, citing In re Hayes (1997), 79 Ohio St.3d 46, reconsideration denied,79 Ohio St.3d 1492. Accordingly, a parent must be given every procedural and substantive protection that the law allows prior to the termination of parental rights. Id. See, also, Hayes, at 48 (observing that "[p]ermanent *Page 5 
termination of parental rights has been described as the `family law equivalent of the death penalty in a criminal case'"). (Citation omitted.)
 {¶ 11} "An appellate court will not overturn a permanent custody order when it is supported by competent, credible evidence." In re Siders
(Oct. 29, 1996), Franklin App. No. 96APF04-413, citing In reBrofford (1992), 83 Ohio App.3d 869, 876-877; In re Hiatt (1993),86 Ohio App.3d 716, motion to file notice of appeal instanter denied,67 Ohio St.3d 1406. See, also, In re Nibert, Gallia App. No. 03CA19,2004-Ohio-429, at ¶ 15-16. Cf. In re Ellis (Aug. 27, 1999), Mahoning App. No. 97 CA 246, citing In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368 (stating that "[a]n appellate court shall not reverse a trial court's determination concerning parental rights unless the determination is not supported by sufficient credible evidence to meet the clear and convincing standard of proof").
 {¶ 12} "[I]n determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct." In re K.M.R., Franklin App. No. 07AP-191, 2007-Ohio-5012, at ¶ 8, citing In reBrofford, supra, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. "`The underlying rational [sic] of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" In re K.M.R., at ¶ 8, citing Seasons Coal Co., at 80; In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435, appeal not allowed, 104 Ohio St.3d 1441, 2004-Ohio-7033. *Page 6 
 {¶ 13} "[T]o terminate parental rights, the movant must demonstrate by clear and convincing evidence that (1) termination is in the child's best interests, and (2) one of the four factors enumerated in R.C.2151.414(B)(1) applies." In re J.Z., at ¶ 10, citing In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723, appeal not allowed,102 Ohio St.3d 1473, 2004-Ohio-2830; see, also, R.C. 2151.414(B)(1) and (D). "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." In reJ.Z., at ¶ 10, citing In re Abram, supra. However, "[clear and convincing evidence] does not mean clear and unequivocal evidence and does not require proof beyond a reasonable doubt." In re J.Z., at ¶ 10, citing In re Abram, supra.
 {¶ 14} Relying on In re C.F., 113 Ohio St.3d 73, 2007-Ohio-1104, reconsideration denied, 113 Ohio St.3d 1516, 2007-Ohio-2208, Victor E. asserts in his sole assignment of error that the trial court failed to make a required finding that FCCS made reasonable efforts to reunify the family.
 {¶ 15} In In re C.F., the Supreme Court of Ohio considered, among other things, the following issue: "`Whether a reasonable efforts determination is required for permanent custody filed pursuant to R.C. 2151.413.'" Id. at ¶ 2. With regard to this issue, the Supreme Court of Ohio "[held] that, except for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights. If the agency has not already proven reasonable efforts, it must do so at the hearing on a motion for permanent custody. However, the specific requirement to make reasonable efforts that is set forth in R.C. 2151.419(A)(1) does not apply in R.C.2151.413 motion for permanent custody." Id. at ¶ 4. *Page 7 
 {¶ 16} In In re C.F., the Supreme Court of Ohio, however, also instructed:
 Under certain circumstances, the law dispenses with the duty to make reasonable efforts to reunify the family. Under R.C. 2151.419(A)(2), the agency need not make reasonable efforts if the parent from whom the child was removed has been convicted of or pleaded guilty to certain criminal offenses, has repeatedly withheld medical treatment or food from the child, has placed the child at substantial risk on more than one occasion because of alcohol or drug abuse, has abandoned the child, or has had parental rights involuntarily terminated with respect to a sibling of the child at issue.
Id. at ¶ 34. (Emphasis added.)
 {¶ 17} Here, the juvenile court found that both parents had abandoned A.E. Because both parents had abandoned A.E., FCCS was under no duty to make reasonable efforts to reunify the family and was not required to prove reasonable efforts to reunify the family at the hearing on its motion for permanent custody. See In re C.F., at ¶ 34. Under these facts and circumstances, we therefore must conclude that the juvenile court was not required to make a finding that FCCS made reasonable efforts to reunify the family.
 {¶ 18} Moreover, as to FCCS' case-planning efforts, by finding that R.C. 2151.414(E)(1) was proven by clear and convincing evidence and A.E.'s parents failed to remedy conditions that caused her to be placed outside the home, the juvenile court impliedly acknowledged that FCCS demonstrated reasonable case planning and diligent efforts when it attempted to assist A.E.'s parents. See, e.g., R.C. 2151.414(E)(1) (providing in part that "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the *Page 8 
home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home").
 {¶ 19} In his sole assignment of error, besides claiming that the juvenile court failed to make a required finding that FCCS made reasonable efforts to reunify the family, Victor E. also sets forth oblique argumentation that challenges the juvenile court's finding that he abandoned A.E.
 {¶ 20} Absent any assignment of error and briefing by appellant Victor E. as to the juvenile court's abandonment determination, we are not required to consider his oblique challenges to the juvenile court's finding of abandonment. See, generally, Toledo's Great Eastern ShoppersCity, Inc. v. Abde's Black Angus Steak House No. III, Inc. (1986),24 Ohio St.3d 198, 202, citing former App.R. 12(A); C. Miller Chevrolet,Inc. v. Willoughby Hills (1974), 38 Ohio St.2d 298, 301 (observing that "[i]t is certainly true * * * that in reviewing the judgment of a lower court, a court of appeals need only pass upon errors assigned and briefed; errors not specifically raised may be disregarded"); Mtge.Electronic Registrations Sys. v. Mullins, 161 Ohio App.3d 12,2005-Ohio-2303, at ¶ 22; see, also, App.R. 12(A)(2) and 16(A)(7).
 {¶ 21} However, even though we need not pass upon Victor E.'s challenges to the juvenile court's abandonment determination due to Victor E.'s failure to specifically assign and brief this issue, we nonetheless recognize that a parent must be given every procedural and substantive protection under law prior to the termination of parental rights. In re J.Z., at ¶ 19. Accordingly, even though we are not required to consider Victor E.'s challenges to the juvenile court's abandonment determination, in the interest of justice we *Page 9 
shall consider Victor E.'s claim that no evidence supported a finding that he intended to permanently relinquish his parental rights.
 {¶ 22} R.C. 2151.011(C) provides: "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." "R.C. 2151.011(C) does not contain a requirement of any particular `intent' on behalf of the parent; rather, the providing defines `abandonment' solely in terms of the time between contacts." In re D.P., Franklin App. No. 06AP-780, 2007-Ohio-1703, at ¶ 7; see, also, id. at ¶ 8 (acknowledging that "[i]t is true that some courts have held that R.C. 2151.011(C) merely creates a presumption of abandonment, which a parent may rebut").
 {¶ 23} Here, the juvenile court found that "[A.E.'s father and mother] have demonstrated a lack of commitment to [A.E.] by failing to regularly visit and communicate with her when able to do so, and abandoning her by failing to visit or communicate with her for more than ninety days. * * * [T]here have been significant stretches of time where the parents failed to visit or communicate with [A.E.]." (Decision and Entry, at 5.)
 {¶ 24} "`The standard for review of the sufficiency of the evidence in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party[.]'" Brooks-Lee v. Lee, Franklin App. No. 03AP-1149,2005-Ohio-2288, at ¶ 19, quoting Hartford Cas. Ins. Co. v. Easley
(1993), 90 Ohio App.3d 525, 530. "`In other *Page 10 
words, is the verdict one which could reasonably be reached from the evidence?'" Id.; see, also, Howard v. Himmelrick, Franklin App. No. 03AP-1034, 2004-Ohio-3309, at ¶ 4.
 {¶ 25} At the hearing, Ms. Jamie Nance-James, an FCCS caseworker, testified that, according to her computation, Victor E. had 130 opportunities to visit A.E., and he visited A.E. 16 times. (June 27, 2007 Tr., at 36-37.) According to Ms. Nance-James, despite Victor E.'s representations that he lacked "excellent transportation" and despite a strike by some FCCS personnel, "there was a nine and a half month time period where Mr. [Victor E.] did not visit with [A.E.]," id., at 38-39, a period spanning from December 2005 until October 2006. Id. at 41. When asked about Victor E.'s gap in visitation, Ms. Nance-James testified: "[O]ften times father did call to set up appointments * * * so he can visit with his daughter and we set those visits up. I talked to the foster parent. She brought [A.E.] — she brought her in and father would not show up. And then other times father would call and say, hey, Jamie, I'm coming to this visit and father would still not show up." Id. at 41-42. Ms. Nance-James further testified that Victor E. would not have had any other contact with A.E. during the period between December 2005 and October 2006 because the only contact that he had with A.E. was at visitation time. Id. at 42. According to Ms. Nance-James, since FCCS moved for permanent care and custody of A.E., Victor E. had visited A.E. approximately once every three weeks. Id. at 45.
 {¶ 26} Here, the testimony of Ms. Nance-James, if believed by the juvenile court, as the trier of fact, supports the juvenile court's finding that Victor E. failed to visit or communicate with A.E. for a significant stretch of time, thereby abandoning A.E. under R.C.2151.011(C). Moreover, to the extent that Victor E.'s testimony contradicted Ms. Nance-James' testimony, the juvenile court, as the trier-of-fact, was free to believe all, *Page 11 
part, or none, of Victor E.'s testimony. See White v. White, Gallia App. No. 03CA11, 2003-Ohio-6316, at ¶ 15; Parsons v. Washington StateComm. College, Franklin App. No. 05AP-1138, 2006-Ohio-2196, at ¶ 21.
 {¶ 27} Construing the evidence most strongly in favor of FCCS, we therefore find that the juvenile court's finding of abandonment by Victor E. is one that reasonably could be reached from the evidence, and, therefore, the juvenile court's finding of abandonment is supported by sufficient evidence.
 {¶ 28} Additionally, any claim by Victor E. that the juvenile court's determination is against the manifest weight of the evidence also is unconvincing, as we conclude that some competent, credible evidence supports the juvenile court's abandonment determination. See C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus (holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence").
 {¶ 29} Therefore, notwithstanding Victor E.'s oblique challenge to the juvenile court's abandonment determination, for the reasons set forth above, we cannot conclude that the juvenile court prejudicially erred by finding that Victor E. abandoned his daughter.
 {¶ 30} Accordingly, for the foregoing reasons, we overrule Victor E's sole assignment of error.
 {¶ 31} Having overruled Victor E.'s sole assignment of error, we now consider Rhonda E.'s two assignments of error.
 {¶ 32} Relying on R.C. 2151.412(G), and In re Halstead, Columbiana App. No. 04 CO 37, 2005-Ohio-403 (Donofrio, J., concurring in part and dissenting in part), Rhonda E. *Page 12 
in her first assignment of error claims that FCCS failed to investigate her fitness to be A.E.'s custodian or her ability to provide A.E. with a suitable placement, and, therefore, the juvenile court abused its discretion by granting permanent care and custody to FCCS.
 {¶ 33} In its decision, the juvenile court stated in part:
 Rhonda's filing of her motion for legal custody was greatly influenced by her desire to keep [A.E.] "in the family." Rhonda visits Ohio only a few times each year. She is approximately sixty years old, single and has no children of her own. She is educated and is financially secure. Although she has no siblings in California, she testified that she has extended family there, but did not specify how many or their relationship to her. While she was driven to keep this child with relatives, should ill health befall Rhonda, it is unknown who would care for [A.E.]. No one in Ohio was up to the task presently, and may not be in the future. Even if an Ohio relative came forward, this would cause yet another significant disruption in [A.E.]'s life both physically and emotionally.
 This case presents an extremely difficult decision for the court. On the one hand, the court appreciates the value of preserving kinship ties. Sharing a genetic connection can present its own advantages in terms of providing a more complete medical history and a sense of belonging. On the other hand, the court also recognizes the immediate and long-term psychological harm that can result from removing a child from the only family she has ever known. While the court is certain that Rhonda could provide a loving and stable home for [A.E.], she is already receiving those benefits from [her foster family], who wish[es] to adopt her. Even though it is possible over time for Rhonda to develop the same level of familiarity with [A.E.'s] physical and developmental issues, as well as the same strength of bond [the foster family] [has] with [A.E.], such a level is not present now. Despite the possibility that the situation may have turned out differently if FCCS had explored placement with Rhonda when she first presented herself, the court cannot undo the past and must accept the facts as they currently exist. Therefore, based on an evaluation of [A.E.'s] best interest, this court denies Rhonda's motion for legal custody. *Page 13 
(Decision and Entry, at 7, 14-15.)
 {¶ 34} R.C. 2151.412(G) provides in part:
 In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
 {¶ 35} "While it is true that placement with a suitable family member is but one factor to consider, it is not dispositive." In re A.V., Franklin App. No. 05AP-789, 2006-Ohio-3149, at ¶ 10, fn. 2, appeal not allowed,111 Ohio St.3d 1471, 2006-Ohio-5625. "Ohio's courts have consistently recognized that the language in R.C. 2151.412(G) is precatory, not mandatory." In re Halstead, at ¶ 39, citing In re Hiatt, supra; In reRollinson (Apr. 27, 1998), Stark App. No. 97 CA 00243; In re Dixon (Nov. 29, 1991), Lucas App. No. L-91-021; see, also, In re A.V., at ¶ 10, fn. 2, quoting In re Halstead, at ¶ 39.
 {¶ 36} In In re Halstead, the Seventh District Court of Appeals explained:
 [R.C. 2151.412(G)] does not command the juvenile court to act in a specific manner. Instead, it sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them. Therefore, the juvenile court's judgment is not in error simply because the court chose not to follow one of these suggested guidelines. * * *
Id. at ¶ 39; see, also, In re A.V., at ¶ 10, fn. 2. *Page 14 
 {¶ 37} Because language in R.C. 2151.412(G) is precatory, not mandatory, and notwithstanding the juvenile court's statement that it was "bothered by FCCS's apparent delay in considering Rhonda as suitable placement" (Decision and Entry, at 12), we cannot conclude that the trial court erred because it declined to follow a suggested guideline.In re A.V., at ¶ 10, fn. 2; In re Halstead, at ¶ 39.
 {¶ 38} Here, the juvenile court satisfied its statutory duty, namely, a weighing of all the relevant factors under R.C. 2151.414, including determining the best interests of A.E. Under R.C. 2151.414, a court must find the best option for a child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). In re Schaefer,111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 64. R.C. 2151.414 does not, however, include a requirement that a juvenile court find by clear and convincing evidence that no suitable relative was available for placement. In reSchaefer, at ¶ 64.
 {¶ 39} Accordingly, for the reasons set forth above, we overrule Rhonda E.'s first assignment of error.
 {¶ 40} Rhonda E.'s second assignment of error asserts that pursuant to Evid.R. 801(D)(2), the juvenile court prejudicially erred by admitting into evidence, over her objection, Ms. Nance-James' statement of A.E.'s mother's wishes, which A.E.'s mother purportedly voiced four months prior to the hearing. Specifically, Rhonda E. asserts that the juvenile court erred because A.E.'s mother was not a "party" under Evid.R. 801(D)(2) and because A.E.'s mother's purported statements were not adverse to FCCS's position.
 {¶ 41} "A trial court has broad discretion in the admission or exclusion of evidence, and absent a clear showing that the court abused its discretion in a manner that materially *Page 15 
prejudices a party, [an appellate court] will not disturb the trial court's evidentiary ruling." Sidenstricker v. Miller PavementMaintenance, Inc., 158 Ohio App.3d 356, 2004-Ohio-4653, at ¶ 23, appeal allowed (2005), 104 Ohio St.3d 1459, 2005-Ohio-204, appeal dismissed as improvidently allowed (2006), 110 Ohio St.3d 1258, 2006-Ohio-4203, citing Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 65; Knowles v.Ohio State Univ., Franklin App. No. 02AP-527, 2002-Ohio-6962, at ¶ 31. "Only evidence that is relevant is admissible." Sidenstricker, at ¶ 23, citing Evid.R. 401, 402.
 {¶ 42} "In reviewing the trial court's admission or exclusion of evidence, [an appellate court] must limit its review to whether the trial court's decision was unreasonable, arbitrary or unconscionable."State v. Grinnell (1996), 112 Ohio App.3d 124, 147, appeal not allowed by, 77 Ohio St.3d 1474, and appeal not allowed by 77 Ohio St.3d 1475, citing State v. Finnerty (1989), 45 Ohio St.3d 104. An unreasonable decision is one that is unsupported by a sound reasoning process.AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161; see, also, Dayton ex rel.Scandrick v. McGee (1981), 67 Ohio St.2d 356, 359, citing Black's Law Dictionary (5 Ed.) (observing that "`[unreasonable' means `irrational'"); State v. Congrove, Franklin App. No. 06AP-1129,2007-Ohio-3323, at ¶ 9. An arbitrary attitude, on the other hand, is an attitude that is "`without adequate determining principle; * * * not governed by any fixed rules or standard.'" Scandrick, at 359, quoting Black's Law Dictionary (5 Ed.); see, also, Congrove, at ¶ 9.
 {¶ 43} Juv.R. 34(I) provides in part that "[t]he Rules of Evidence shall apply in hearings on motions for permanent custody." According to Evid.R. 801(C) of the Ohio Rules of Evidence, "`[h]earsay' is a statement, other than one made by the declarant *Page 16 
while testifying at the trial or hearing, offered to prove the truth of the matter asserted." "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid. R. 802.
 {¶ 44} Evid.R. 801(D)(2) provides that a statement is not hearsay if:
 The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.
 {¶ 45} Evid.R. 801 does not define "party" for purposes of Evid.R. 801(D)(2). See, generally, Evid.R. 801. Weissenberger's Ohio Evidence Treatise (2007 Ed.) 501, Section 801.19, however, observes that, as used in Evid.R. 801(D)(2), "[t]he term `parties' refers to parties to the litigation." Id. at 502. See, also, Black's Law Dictionary (8 Ed.Rev. 2004) 1154 (defining "party" as, among other things, "[o]ne by or against whom a lawsuit is brought").
 {¶ 46} Juv.R. 2(Y) of the Ohio Rules of Juvenile Procedure defines "party" as "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parents of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." *Page 17 
 {¶ 47} Also, in Garabrandt v. Lucas Cty. Children Services Bd. (1988),47 Ohio App.3d 119, 121, the Sixth District Court of Appeals held in part that "[i]f * * * it comes to the social welfare agency's attention, through a paternity suit or otherwise, and prior to the court's granting permanent custody to the social welfare agency, that a previously unidentified individual is the biological parent of the children, the social welfare agency must * * * acknowledge the fact of the children's biological parentage and include said parent as a party to the permanent custody proceedings."
 {¶ 48} Construing Juv.R. 2(Y), and Garabrandt, and notwithstanding A.E.'s mother's failure to appear at the permanent custody hearing, we find that A.E.'s mother was a "party" for purposes of the permanent custody hearing and Evid.R. 801(D)(2). We therefore disagree with Rhonda E.'s claim that A.E.'s mother was not a party.
 {¶ 49} Rhonda E. also contends that A.E.'s mother's statements indicating that she was not comfortable with sending A.E. to California; that she wanted A.E. to remain with foster parents; that she did not want parental rights terminated; and that she wanted A.E.'s foster parents to allow A.E. to have some contact with her were inadmissible because these statements were not offered against FCCS.
 {¶ 50} Section 801.33 of Weissenberger's Ohio Evidence Treatise (2007 Ed.) states:
 Rule 801(D)(2)(a) provides for the admissibility of statements by a party in her or his individual or representative capacity. An out-of-court statement of a party, offered against the party by the opposing party, is admissible pursuant to Rule 801(D)(2)(a).
 The term "admission" is often misleading. While the term "admission" appears to imply that the out-of-court statement must be a confession or statement against interest, in *Page 18 
actuality, any prior statement of a party is admissible providing it is offered against the party at trial. The statement need not be against interest when it was made as long as the opposing party is offering the out-of-court statement at trial for a purpose that is appropriate in the lawsuit pursuant to the rules of relevancy.
Id. at 509. See, also, Evid.R. 401 (stating that "`[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.").
 {¶ 51} In the instant case, we cannot conclude that the state's offering of A.E.'s mother's out-of-court statements was for a purpose that was inappropriate under the rules of relevancy. Here, A.E.'s mother's statements were relevant to the determination of A.E.'s best interests in relation to Rhonda E.'s custody motion.
 {¶ 52} Moreover, even assuming arguendo that the trial court erred by admitting A.E.'s mother's out-of-court statements into evidence, we cannot conclude that Rhonda E. has demonstrated that she wasmaterially prejudiced by the juvenile court's admission of this evidence.
 {¶ 53} "`The fact evidence is damaging or harmful to the defense is not the meaning of prejudice as set forth in the rules of evidence.'"State v. Freily (Dec. 5, 1997), Marion App. No. 9-97-19, quotingState v. Bernatowicz (1989), 62 Ohio App.3d 132, 138, citing State v.Bakst (1986), 30 Ohio App.3d 141, 144. "`It is only when evidence will induce the jury to decide the case on an improper basis, often an emotional one, that a defendant suffers material prejudice.'"Freily, supra, citing Bernatowicz, at 138, citing U.S. v. Medina (C.A.7, 1985), 755 F.2d 1269. *Page 19 
 {¶ 54} Here, Rhonda E. fails to show how the juvenile court's admission of A.E.'s mother's out-of-court statements induced the juvenile court, as the finder of fact, to decide the present case on an improper basis. Even without considering the caseworker's testimony of A.E.'s mother's purported statements, we find that the juvenile court's denial of Rhonda E.'s custody motion and its award of permanent custody of A.E. to FCCS is supported by some competent, credible evidence. Accordingly, the juvenile court's judgment is not against the manifest weight of the evidence. See C.E. Morris Co., at syllabus.
 {¶ 55} For the reasons set forth above, we therefore overrule Rhonda E.'s second assignment of error.
 {¶ 56} For the foregoing reasons, Victor E.'s sole assignment of error and Rhonda E.'s two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
 T. BRYANT, J., concurs. SADLER, J., concurs separately.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Appellant Rhonda E., a California resident, is Victor E.'s sister. For purposes of anonymity, the appellants' last names are designated by initials only, and the minor child's name is designated by initials only. See, e.g., In re M.E.G., Franklin App. No. 06AP-1256,2007-Ohio-4308, at ¶ 1, fn. 1; State v. Johnson, Franklin App. No. 06AP-67, 2007-Ohio-2385, at ¶ 43, fn. 5, appeal not allowed,115 Ohio St.3d 1423, 2007-Ohio-5056; In re L.W., Franklin App. No. 05AP-317,2006-Ohio-644, at ¶ 1, fn. 2, appeal not allowed, 109 Ohio St.3d 1497,2006-Ohio-2762.
[2] Appellant Victor E. appeals from the juvenile court's judgment in appellate case No. 07AP-685. Appellant Rhonda E. appeals from the juvenile court's judgment in appellate case No. 07AP-748.